# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSE ESPINOSA, | ) |
| Plaintiff, | ) |
| | ) No. 06 C 3351 |
| v. | ) |
| | ) Wayne R. Andersen |
| JOHN POTTER, Postmaster General, | ) District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Espinosa ("Espinosa") brought this suit against defendant John Potter, Postmaster General, alleging that Espinosa was discriminated against on the basis of Espinosa's race, age, and disability, and that Espinosa was subjected to unlawful retaliation. This matter is before the court on Potter's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, that motion is granted.

## BACKGROUND

Espinosa, an Hispanic male in his forties, is an employee of defendant United States Post Office ("Postal Service") in Lombard, Illinois. Espinosa filed this action alleging that the Postal Service discriminated against Espinosa on account of his race, age, and disability, and that Espinosa was subjected to unlawful retaliation. John Potter is named as a defendant only in his official capacity as the Postmaster General.

A.  *Espinosa's Physical Impairments*

Espinosa developed a foot condition called plantar fibromatosis in 1997, while he was employed by the Postal Service, and had surgery to correct it in 1998. Dr. Lisa Rechkemmer, Espinosa's doctor, advised the Postal Service that Espinosa should not walk on uneven ground,

such as grass, in order to avoid aggravating the condition. Because of this walking restriction, the Lombard postmaster, Richard Wetendorf, assigned Espinosa the position of limited duty carrier. Espinosa is the only limited duty carrier at the Lombard office and receives the same benefits and pay as the other carriers.

In April, 2005, Espinosa received an email message from Cindy Plahuta, Espinosa's Union Steward. In that email message, Plahuta warned Espinosa that, because his doctor had restricted him at work, Espinosa could be disciplined if he was seen walking on grass. Soon after receiving that email, Espinosa contacted Dr. Rechkemmer and asked that she reduce Espinosa's medical restriction. On May 6, 2005, Dr. Rechkemmer wrote a letter to Postmaster Wetendorf which clarified the restrictions placed on Espinosa. Specifically, Dr. Rechkemmer's letter provided that "specific restrictions are in respect to constant walking on uneven surfaces," but that Espinosa could walk "occasionally on uneven surfaces."

In February, 2004, Espinosa was also diagnosed with non-insulin dependent diabetes, which required Espinosa to take pills twice daily and to test his blood once per day.

B.  *Espinosa's Allegations of Disability Discrimination*

Espinosa alleges that various discriminatory actions were taken against him by the Postal Service as a result of his alleged disabilities. Specifically, Espinosa alleges that, as a limited duty carrier, he was given a series of "busy work" assignments, such as throwing out undeliverable third class mail, and was denied the opportunity to work routes as a letter carrier, which Espinosa alleges is his "craft." Espinosa further alleges that the Postal Service also substantially reduced Espinosa's overtime as a result of his limited duty status.

Espinosa further alleges that he was removed from several postal routes due to disability

and retaliation discrimination. One such route was Route 15. In March, 2006, the Lombard Post Office put Route 15 up for bid due to the retirement of the incumbent carrier. Since 1993, Postmaster Wetendorf had implemented a plan to provide walking relief to carriers; that is, when a route that involved all walking or all driving came up for bid, it was modified so that each route would eventually consist of part walking and part driving. Thus, when Route 15 came up for bid, the bid contained a disclaimer which advised potential bidders that the route would be modified in accordance with Wetendorf's plan. Espinosa bid on Route 15 but was determined to be ineligible because the walking portion violated his medical restrictions.

C.    *Espinosa's Allegations of Race Discrimination*

Espinosa further alleges that racial slurs and disparate treatment of Hispanics were tolerated at the Lombard Post Office. Espinosa alleges that Jaime Gutierrez, a supervisor, referred to Espinosa as a "wetback" and told him to "swim back to Mexico." Espinosa also alleges that Postmaster Wetendorf yelled at Juan Gonzalez, another Hispanic letter carrier, from across the post office for violating Postal Service policy by loading a U-cart with mail prior to 8:00 a.m., but that Wetendorf did not reprimand a white letter carrier for doing the same thing a few days later.

D.    *Espinosa's Allegations of Age Discrimination*

Espinosa also alleges that he was discriminated against on the basis of his age because his supervisor, Tammy Hollingsworth, allegedly stated to Espinosa that Espinosa could not complete his assignments as quickly as younger employees.

E.    *Espinosa's EEO Contact and Alleged Subsequent Retaliation*

On March 22, 2005, Espinosa contacted an Equal Employment Opportunity ("EEO")

counselor and complained of discrimination based on Espinosa's race, age, and disability. Espinosa alleges that, following his EEO complant, the Postal Service's efforts to discipline him escalated. Specifically, Espinosa alleges that, within a month of his complaint, he was subjected to five street supervisions and that, following those supervisions, he was issued a notice of suspension for failure to follow instructions. That notice of suspension was later reduced to a letter of warning. Espinosa received two subsequent notices of suspension for failure to follow instructions. Espinosa also alleges that, following his EEO complaint, the Postal Service proposed his suspension for unsafe driving, proposed another suspension for failing to properly swipe his identification badge as required by Postal Service policy, prohibited Espinosa from doing mounted routes, and repeatedly changed his work hours.

Additionally, on January 27, 2005, a notice of intent to remove Espinosa from the Postal Service was issued after Espinosa was observed by his supervisor driving a postal vehicle while talking on a cell phone, a violation of Postal Service policy. That notice was not sustained in the union grievance process and Espinosa alleges that his proposed removal was in retaliation for his EEO complaint.

On June 20, 2006, Espinosa filed a five-count complaint against the Postal Service alleging unlawful race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq.*, age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*, disability discrimination because of Espinosa's plantar fibromatosis in violation of the Rehabilition Act of 1973, 29 U.S.C. §§ 791 *et seq.*, disability discrimination because of Espinosa's diabetes in violation of the Rehabilitation Act of 1973, and retaliation. The Postal Service now moves for summary judgment on all

4

counts.

## DISCUSSION

A.   *Legal Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Kizer v. Children's Learning Ctr.*, 962 F.2d 608, 611 (7th Cir. 1992).   In order to survive a motion for summary judgment, the nonmoving party must present definite, competent evidence to rebut the summary judgment motion.  *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

B.   *Race Discrimination Under Title VII*

Count I of Espinosa's complaint alleges that he was discriminated against on the basis of his race in violation of Title VII.  In order to survive summary judgment on claims of discrimination under Title VII, a plaintiff can proceed under either the direct or indirect methods of proof.  *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 939 (7th Cir. 2007).  Here, Espinosa attempts to prove his claim for race discrimination under the direct method of proof.

A plaintiff can prevail under the direct method by "constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).  In

5

evaluating claims under the direct method, the Seventh Circuit has recognized three different types of circumstantial evidence of intentional discrimination. *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 862 (7th Cir. 2007). The first type consists of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id.* The second type is evidence that similarly situated employees outside the protected class received systematically better treatment. *Id.* The third type is evidence that the plaintiff was qualified for a job in question but passed over in favor of a person outside the protected class and that the employer's stated reason is a pretext for discrimination. *Id.*

Espinosa first argues that he has provided direct evidence of race discrimination because one of Espinosa's supervisors allegedly called Espinosa a "wetback" and told him to "swim back to Mexico." The Seventh Circuit has made clear that "isolated comments that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006). A remark can raise an inference of discrimination when it "was (1) made by the decision maker, (2) around the same time of the decision, and (3) in reference to the adverse employment action." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). Here, Espinosa's allegations regarding the alleged comments made by his supervisor have no time foundation and Espinosa has not produced any evidence that the alleged comments were made around the same time of any employment decision or that those alleged comments referenced any adverse employment action. Therefore, those alleged comments provide

6

Espinosa little support in his claim of race discrimination.

Espinosa also argues that he has provided direct evidence of race discrimination because Postmaster Wetendorf allegedly yelled at an Hispanic carrier for breaking a post office rule yet days later observed a non-Hispanic employee engaging in the same conduct but did not reprimand that non-Hispanic employee. In addition to being hearsay, the supervisor's yelling was in response to the fact that the Hispanic employee had violated Postal Service policy and the supervisor did not mention the employee's Hispanic ethnicity in any way. Thus, like the isolated comment allegedly made to Espinosa, the fact that a supervisor might have yelled at a Hispanic worker for violating a rule provides little support for Espinosa's claim of race discrimination. Therefore, we find that Espinosa has failed to construct a "convincing mosaic" that non-Hispanics received systematically better treatment than Hispanics in the Lombard, Illinois office of the Postal Service. *See Hossack*, 492 F.3d at 862. Accordingly, Espinosa has failed to establish his claim of race discrimination and summary judgment is granted in favor of the Postal Service on Count I.

C.	*Age Discrimination Under the Age Discrimination in Employment Act of 1967*

Count II of Espinosa's complaint alleges that he was subjected to age discrimination in violation of the Age Discrimination in Employment Act of 1967. Like Title VII claims, a plaintiff may establish a claim for age discrimination under either the direct or indirect methods of proof. *See Hemsworth.*, 476 F.3d at 490. Here, Espinosa's sole argument in support of his age discrimination claim is that one of his supervisors allegedly stated to Espinosa that Espinosa could not complete his assignments as quickly as younger employees. However, Espinosa has not alleged that this comment was made around the same time as any employment decision or

7

that it referenced any adverse employment action. Therefore, we find that this allegation is insufficient to establish age discrimination under either the direct or indirect methods of proof. *See Id.* at 491; *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). Accordingly, summary judgment is granted in favor of the Postal Service on Count II.

D.   *Disability Discrimination Under the Rehabilitation Act of 1973*

Counts III and IV of Espinosa's complaint allege that he was subjected to disability discrimination in violation of the Rehabilitation Act of 1973 based on his plantar fibromatosis and diabetes, respectively. In order to prevail on a claim under the Rehabilitation Act, a plaintiff must demonstrate that (1) he is disabled as defined by the Act; (2) he is otherwise qualified for the position sought; (3) he has been excluded from the position solely because of his disability; and (4) the position exists as part of a program or activity receiving federal financial assistance. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir. 2006).

To be "disabled" under the Rehabilitation Act, a person must be so limited in one or more major life activities that she is impaired in her ability to "perform the variety of tasks central to most people's lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 201 (2002). The determination of whether a particular person with an impairment is substantially limited in a major life activity must be individualized. *Branham v. Snow*, 392 F.3d 896, 903 (7th Cir. 2004). In other words, a court may not declare that all individuals who suffer from a particular medical condition are disabled for purposes of the Rehabilitation Act. *See id.*

   1.   Plantar Fibromatosis

Espinosa alleges in Count III that his condition of plantar fibromatosis is a "disability"

for purposes of the Rehabilitation Act because it interferes with his essential life function of walking. We disagree. Espinosa's own testimony demonstrates that his plantar fibromatosis only affects his ability to walk on uneven ground. Def.'s Rule 56.1 Statement, ¶ 7. The condition does not affect his walking on even surfaces and does not affect his ability to walk long distances or for long periods of time. *Id.* ¶ 8. *See Moore v. J.B. Hunt Transp. Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) (finding that a plaintiff with arthritis was not substantially limited in walking when he could walk up to a mile and his condition only affected the rate of his activities). Further, in May, 2005, Espinosa's doctor informed the Postal Service that Espinosa could "occasionally" walk on uneven surfaces. In light of this evidence, we find that Espinosa is not "disabled" for purposes of the Rehabilitation Act because of his plantar fibromatosis. Therefore, Espinosa cannot prove his claim for disability discrimination based on that condition. Accordingly, summary judgment is granted in favor of the Postal Service on Count III.

2. Non-Insulin Dependent Diabetes

Espinosa alleges in Count IV that his non-insulin dependent diabetes is a "disability" for purposes of the Rehabilitation Act because it interferes with his essential life function of eating. Again, we disagree. Espinosa testified that his diabetes did not prevent him from doing anything. Def.'s Rule 56.1 Statement, ¶ 29. In fact, in his response to the Postal Service's motion for summary judgment, Espinosa does not even argue that he is disabled due to his diabetes. Therefore, we find that Espinosa's diabetes condition does not qualify him as "disabled" for purposes of the Rehabilitation Act. Accordingly, Espinosa cannot prove his claim for disability discrimination based upon his diabetes and summary judgment is granted in favor of the Postal Service on Count IV.

*E.     Retaliation*

Count V of Espinosa's complaint alleges unlawful retaliation. A plaintiff may prove retaliation under either the direct or indirect methods of proof. *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008). Here, Espinosa attempts to prove retaliation under the indirect method of proof.

The Supreme Court established the procedure for proceeding under the indirect method of proof in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* indirect method, a plaintiff must first establish a *prima facie* case of retaliation. *Stewart,* 207 F.3d at 376. Once that is established, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the action that is not pretextual. *Id.*

1.     Espinosa cannot establish a *prima facie* case of retaliation.

A plaintiff may establish a *prima facie* case of retaliation under the indirect method by showing: (1) that she engaged in statutorily protected activity; (2) that she suffered a materially adverse action; (3) that she was meeting her employer's legitimate expectations; and (4) that she was treated less favorably than some similarly situated employee who did not engage in statutorily protected activity. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). Here, Espinosa has failed to establish his *prima facie* case because he neither identifies nor produces any evidence of any similarly situated employee that did not engage in statutorily protected activity and was treated more favorably than Espinosa. Specifically, Espinosa's evidence lacks any information relating to the job duties of any comparators, any supervisors involved in any comparators' discipline or lack thereof, and whether any comparators had job performance histories somewhat comparable to Espinosa's. Based on this dearth of evidence, we

find that Espinosa has failed to satisfy his *prima facie* burden. *See Hull v. Stoughton Trailers LLC*, 445 F.3d 949, 952 (7th Cir. 2006).

    2.    The Postal Service had legitimate, non-retaliatory reasons for its actions that were not pretextual.

Even if Espinosa could establish his *prima facie* case of retaliation, his claim would still fail because the Postal Service had legitimate, non-retaliatory reasons for its actions that were not pretextual. Espinosa bases his retaliation claim on the following actions, allegedly taken by the Postal Service after Espinosa made his EEO complaint: (1) a proposed removal for using a cell phone while driving; (2) a proposed suspension for unsafe driving; (3) a proposed suspension for failing to swipe his identification badge on the time clock; (4) five street supervisions in one month; (5) removal from Route 15; (6) being prohibited from doing mounted routes; and (7) changes of his work hours. We shall address each of these alleged actions.

    a.    Proposed removal for using a cell phone while driving

In January, 2005, the Postal Service proposed Espinosa's removal after a supervisor observed Espinosa driving a postal vehicle while using a cell phone, a violation of Postal Service policy. This discipline was administered two months before Espinosa filed his EEO complaint. Therefore, it does not support Espinosa's claim for retaliation because of that EEO complaint. Additionally, Espinosa did not complain to an EEO counselor within 45 days of this disciplinary action. Therefore, this claim also fails as untimely. *See Smith v. Potter*, 445 F.3d 1000, 1006-07 (7th Cir. 2006).

    b.    Proposed suspension for unsafe driving

Espinosa's next purported retaliatory action is an April 20, 2005 proposed suspension for unsafe driving that ultimately resulted in a letter of warning. The evidence demonstrates that the

11

Postal Service proposed this suspension in response to six violations of Postal Service policies by Espinosa: (1) driving without a seat belt; (2-4) unsafe driving maneuvers; (5) failure to scan MSP barcodes; and (6) failure to follow instructions. Espinosa's supervisor observed each of these violations, and Espinosa admitted to committing each of the violations. We find that multiple violations of safety rules is a legitimate, non-retaliatory reason for Espinosa's proposed suspension, and Espinosa has failed to produce any evidence of pretext. *See Contreras v. Suncast Corp.*, 129 F. Supp. 2d 1173, 1181 (N.D. Ill. 2001). Accordingly, this disciplinary action fails to support Espinosa's retaliation claim.

c. Proposed suspension for failing to swipe the time clock

Espinosa was also disciplined for failing to swipe his identification badge on an electronic time clock after completing specific tasks at work, as required by Postal Service policy. Again, Espinosa admits to this violation. Violations of company policies are legitimate, non-retaliatory reasons for discipline, *see Forrester v. Raulaund-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006), and Espinosa has produced no evidence of pretext. Although Espinosa argues that one of his supervisors gave him permission to engage in the prohibited conduct, he has produced no evidence to support that argument. It is well established that mere allegations, without evidentiary support, are insufficient to survive summary judgment. *See Butts*, 387 F.3d at 924. Accordingly, this disciplinary action fails to support Espinosa's claim of retaliation.

d. Street supervisions

Espinosa next argues that the Postal Service retaliated against him by subjecting him to five street supervisions in one month. However, the evidence demonstrates that the number of supervisions assigned to Espinosa was not unusual for a carrier who had recently been cited for

12

safety violations. *See* Ex. U to Def.'s Rule 56.1 Statement, at 24. The evidence further demonstrates that the supervisions were not adverse because Espinosa was not harassed and his employment was not materially affected. *See* Ex. C to Def.'s Rule 56.1 Statement, at 52-53. Therefore, we find that the Postal Service's decision to supervise Espinosa to ensure quality and compliance with rules is legitimate, non-retaliatory, and not pretextual. Accordingly, this disciplinary action fails to support Espinosa's claim of retaliation.

    e.  Removal from Route 15

Espinosa next argues that Postmaster Wetendorf retaliated against Espinosa when Wetendorf changed Route 15 and took it outside of Espinosa's medical restrictions. However, the evidence establishes that Wetendorf had announced his plans to change Route 15 as part of his plan to provide walking relief to carriers prior to Espinosa's bid on the route, and that the bid notice for Route 15 contained a disclaimer that the route would change to add up to six hours of walking. Thus, Espinosa knew or should have known at the time he bid on Route 15 that the route change would be outside of his medical restrictions. Further, Espinosa has failed to produce any evidence that Postmaster Wetendorf's plan to provide walking relief to carriers was actually a pretext for retaliation against Espinosa. Accordingly, Espinosa's removal from Route 15 fails to support his claim of retaliation.

    f.  Prohibition from assignments to mounted routes

Espinosa next argues that he was retaliated against when he was prohibited from working on mounted routes. At the time of the prohibition, Espinosa's medical restrictions provided that he was not to walk on uneven surfaces. Espinosa admitted that performing mounted routes involved some walking on uneven ground. Ex. C to Def.'s Rule 56.1 Statement, at 36. We find

13

that ensuring strict conformance with a doctor's medical restrictions is a legitimate business reason, and that it was not a pretext for retaliation in this case. Accordingly, the prohibition on mounted routes fails to support Espinosa's claim of retaliation.

        g.        Change of work hours

Finally, Espinosa argues that his work hours were arbitrarily changed in retaliation for his EEO complaint. From 1999 to August, 2005, Espinosa's hours as a modified carrier were 8:30 a.m. to 5:00 p.m, which were normal for modified carrier positions. In August, 2005, his hours were changed to 9:00 a.m. to 5:30 p.m. in order to assist with his diabetic needs In March, 2006, after bidding on Route 15, Espinosa worked carrier hours, from 7:00 a.m. to 3:30 p.m. After coming off Route 15, Espinosa was again assigned work hours of a modified carrier, 9:00 a.m. to 5:30 p.m. Although Espinosa's work hours changed, those changes were either the result of changes in Espinosa's positions or to assist with his medical needs. Espinosa has failed to produce any evidence that those changes in work hours were a pretext for retaliation. Accordingly, his changes in work hours fail to support his claim of retaliation.

Because Espinosa has failed to identify or produce any evidence of a similarly situated employee that was treated more favorably than Espinosa, and because the Postal Service had legitimate, non-retaliatory reasons for taking the actions discussed above against Espinosa that were not pretextual, summary judgment is granted in favor of Potter on Count V.

## CONCLUSION

For the foregoing reasons, defendant John Potter's motion for summary judgment [29] is granted with respect to all counts of plaintiff Jose Espinosa's complaint. This case is terminated.

It is so ordered.

                                                                                                   _____
                                                                                                                     Wayne R. Andersen
                                                                                         United States District Court Judge

Dated: _____